*J. H. Felker,* for plaintiff. *R. L. Cox,* for defendant.

---

### HOLMES v. HOLMES.

1. A mutual mistake of law is a good defense against an action to recover money, under contract of purchase, where there is full knowledge of all the facts, provided the mistake be clearly proved and the plaintiff can not in good conscience receive the money sued for.

2. A husband and wife owned a tract of land in common. The wife died, leaving her husband and eight children as her heirs at law. Subsequently the husband died. The adult heirs agreed to sell to one of their number their respective shares, but as one of the shares was owned by the minor children of a deceased heir, it was agreed that one of the heirs should administer upon both estates and sell the land at administrator's sale for the purpose of investing the purchaser with a good title to the whole. Accordingly application was made to the ordinary for administration on both estates. The attorney for the applicant and the ordinary were of the opinion, and so advised, that upon the death of the wife her estate in the land passed to the husband as sole heir, and, acting on this mistake of law, administration was had upon the estate

of the husband alone. An order of sale was granted, and the heir who had contracted to buy became the purchaser at administrator's sale, bidding upon the land under the mistake of law and the representation of the administrator, who was a coheir, that the title of both parents would pass to the purchaser by virtue of the sale. Afterwards the purchaser discovered the mistake of law under which he acted, and refused to pay his bid. In an action by the administrator to recover the amount of the bid: *Held,* that a verdict for the defendant was proper.

JULY 15, 1913.

Complaint. Before Judge Fite. Dade superior court. February 5, 1912.

The action was by an administrator against the highest bidder at an administrator's sale of land, to recover the amount of the bid. The defendant pleaded that he bid upon the land upon the representation of the administrator, and under a mistake of law induced by him, that his intestate owned the land, and that the administrator had the right to sell and convey the entire lot; whereas the administrator's intestate had title to only a part of the lot of land; and that for this reason he is relieved from liability for the purchase-money of the land, and the sale is invalid. It appeared at the trial that James C. Holmes and his wife owned a lot of land. Mrs. Holmes died before her husband, and upon the death of Mr. Holmes the defendant, who was a son, contracted to buy the shares of his codistributees in the land. He took conveyances from several of them, and, as some were minors, an administration was deemed necessary in order that the defendant might acquire a complete title. Accordingly a son, J. D. Holmes, applied for letters of administration on the estates of his father and mother, in one petition. The defendant submitted evidence that on the day letters of administration were granted, the ordinary, acting on the advice of an attorney of the applicant that upon the death of Mrs. Holmes all her estate in the land passed by inheritance to her husband to the exclusion of her children, issued letters of administration only upon the estate of James C. Holmes to J. D. Holmes, who duly qualified as administrator. The administrator applied for leave to sell the land of his intestate, the order was duly granted, and the land was advertised and sold as the land of James C. Holmes, and was bid off by the defendant. Since the sale the defendant has acquired the interests of all the heirs except that of the minors, who own the interest of their father, a deceased son of Mr. and Mrs. J. C. Holmes. The administrator and the defend-

ant at the time of the sale were fully informed of the respective ownerships of James C. Holmes and his wife in the land, and that Mrs. Holmes died about three years before her husband, leaving eight children, including the administrator and the defendant. The administrator testified, that he did not have sufficient money to discharge the debts of his intestate without a sale of the land (the amount of the debts did not appear, though the inference was that they were not large) ; that he offered the land for sale as being the sole property of his intestate, but it was his understanding that his intestate owned but 19/26 of the land; that by an arrangement with the defendant he had accepted $500 for his share in the land. The estate was worth more than the amount at which the adult heirs had agreed to sell it to the defendant, and the administration was had solely for the purpose of perfecting title and protecting the minor heirs. Upon the conclusion of the evidence the court directed a verdict for the defendant.

*Foust & Payne,* for plaintiff. *W. U. Jacoway,* for defendant.

Evans, P. J. (After stating the foregoing facts.) The disposition of this case depends upon a decision whether or not its facts bring it within the rule that, under the doctrine of caveat emptor, a purchaser at an administrator's sale can not repudiate his bid because of a defective title, or want of title in the decedent. The principle of caveat emptor has never been carried to the extent that a purchaser at an administrator's sale is not relievable against the fraud or misrepresentation of an administrator. If an administrator is guilty of imposition, and the purchaser is influenced in making his bid on account of the fraud or misrepresentation of the administrator, he is relievable of his bid. *Colbert* v. *Moore,* 64 *Ga.* 502; *Jones* v. *Warnock,* 67 *Ga.* 484; *Kingsbery* v. *Love,* 95 *Ga.* 543 (22 S. E. 617). If the administrator had been guilty of such conduct as to induce the purchaser to bid upon the faith that his intestate was the owner of the whole fee, and knew that such bidding was made under such misapprehension, it would be inequitable for him to hold the purchaser, to a bid induced by his own misrepresentation. There is no pretense, however, in the present case that the administrator has been guilty of any intentional fraud or misrepresentation. The parties seem to have acted with a full knowledge of all the facts, but under a misapprehension of the law as applied to these facts. There was a conference among

the children of Mr. and Mrs. Holmes. One of the children desired to purchase the land. A price was agreed upon. In the negotiations all parties conceded that the minor children of the deceased brother were entitled to his share, and that their interest could not be conveyed on account of their minority. To meet this difficulty in the matter of conveyance of title, an administration upon the estates of Mr. and Mrs. Holmes was deemed necessary. Accordingly, the eldest brother was selected to apply for administration on both estates, with a view of obtaining an order to sell the land at administrator's sale in effectuation of the agreement among the adult heirs. Application was made to the ordinary pursuant to this arrangement; but it appears that both the applicant's attorney and the ordinary labored under a misapprehension of law that upon the death of Mrs. Holmes her entire estate was inherited by her husband to the exclusion of her children, and it was upon this assurance by the ordinary and attorney for the applicant that administration upon the estate of Mrs. Holmes was abandoned, and letters granted upon the estate of Mr. Holmes. There is no dispute that this sale was planned and made solely for the purpose of perfecting title of the prospective bidder. At the time of the suit the bidder was in possession of the land, having purchased the interests of the adult heirs of his father and mother. Some of these purchases were made prior to the sale and some afterwards.

The law does not look with favor upon private agreements to divest the title of minors in property in pursuance of such agreement, whether made with the minors themselves or with others who have the minors' interest at heart. The policy of the law is that sales where the interest of minors is involved, under judicial process, shall be unfettered by any private arrangement. The minors are entitled to their share of the land at the price fixed by a sale pursuant to the statute. Likewise creditors are interested in having a sale of the property of their decedent free from any entanglements growing out of a private arrangement among heirs that the property should bring a specific price at the sale. It is therefore no argument in favor of the collection of a bid made at an administrator's sale, under a mistake of law, that the sale was pursuant to an arrangement to which the bidder was a party, having for its purpose the divestiture of the title of the heirs of the intestate to the property offered for sale.

The rule is the same respecting purchases at sheriffs' sales as it is at administrators' sales. We have a case of an execution sale, where the purchaser thereat was a mortgagee whose lien was superior in date to the judgments under which the property was sold. He purchased the property under a mistake of law that the effect of the sale would be to divest the lien of his mortgage and entitle him to participate in the proceeds. His competitive bidder was laboring under the same mistake of law. Immediately after the land was knocked off he was apprised of his mistake, and notified the sheriff that he would not comply with his bid. The land was immediately resold, and the sheriff, for the use of the defendant in execution, brought suit against him to recover the difference in the two sales. The court denied him a recovery, on the principle that a mistake of law is a good defense against an action to recover money, provided the mistake is clearly proved, and the plaintiff can not in good conscience receive the money. *Collier* v. *Perkerson,* 31 *Ga.* 117.

This is not a case where the purchaser simply bids upon property exposed to public sale by the administrator on the assumption that the title of the administrator's intestate is good; nor is it a case where he relied entirely upon the personal assurance of the administrator that the title of his intestate was good. Other elements enter into it. It is a family arrangement entered into by all of the parties who were able to contract, and the bid by the defendant in the execution of such plan was made under a mistake of law, induced by the plaintiff's counsel and the ordinary, that the husband inherited the wife's estate, to the exclusion of the children. Now it would be inequitable to allow the heirs of Mrs. Holmes to have her interest in the land administered upon and sold for distribution among her heirs, when some of them have already received their share of the purchase-price of the entire land. The minor children of the deceased child of Mr. and Mrs. Holmes will not be hurt, because the undisputed testimony is that the land is worth as much or more than the amount which was paid for it at the administrator's sale. It would be inequitable to allow them to have the benefit of a portion of the land as being the property of their grandmother's estate and also receive their share of the proceeds of the entire tract as being the property of their grandfather. Neither does it appear that the creditors of James C.

Holmes will sustain any loss; for while the amount of the debts is not made to appear, yet the inference is strong that they are of very small value. It does not appear that Mrs. Holmes owed any debts at all. So that, under all the circumstances, we believe that the sale was made under a mutual mistake of law, participated in by the administrator and the bidder, and that it would be inequitable to require compliance with the bid. Civil Code, § 4576.

*Judgment affirmed. All the Justices concur.*