## HAMIL, administrator, v. FLOWERS *et al.,* executors.

1. An equitable petition was filed in a county in this State, where a corporation was chartered and had its principal office, alleging that by agreement with a stockholder and promoter the intestate of the plaintiff was to have a certain number of shares of stock of the corporation when they should be paid for in the manner provided for in the contract, that this had been done, and that the plaintiff's intestate became the real owner, but the executors of the other contracting party refused to transfer or have transferred such stock. *Held,* that the shares of stock were personal property, and their situs was the domicile of the domestic corporation, for the purpose of giving jurisdiction to an equitable proceeding for any of the purposes indicated in the Civil Code, § 4976.

(*a*) The substantial purpose of the bill being as indicated in the preceding headnote, although a prayer for specific performance and for a decree for dividends was not sustainable, appropriate relief could be granted under the prayer for general relief.

(*b*) The person who was alleged to have contracted with the intestate of the plaintiff having died a resident of another State, and letters testamentary having been there granted to several executors, some of whom were residents of that State, such non-resident executors could be served by publication under the Civil Code, § 4976.

Argued February 12,—Decided July 6,—Rehearing denied August 14, 1909.

Equitable petition. Before Judge Worrill. Early superior court. July 27, 1908.

H. F. Hamil as administrator of J. M. Bivings, deceased, filed his equitable petition in the superior court of Early county against W. H. Flowers, alleged to be a resident of Early county in this State, Elizabeth Flowers, E. P. Flowers, Brooks Flowers, and John J. Flowers Jr., of the State of Alabama, all as executors of J. J. Flowers, deceased, who had died in the State of Alabama and whose will had been there probated, which executors were alleged to have qualified as such and to have taken possession of the estate, including the stock of the testator in the Flowers Lumber Company. The plaintiff alleged, among other things, the following: In 1898, during the lifetime of the defendants' testator and the plaintiff's intestate, they entered into a contract by which the former was to convey to the latter a one-sixteenth interest in a corporation of Early county, Ga., known as the Flowers Lumber Co. Prior to entering into the contract the plaintiff's intestate and two other persons had been engaged in the manufacture of lumber in Early county under the name of the Bivings Brothers Lumber Company, which was incorporated under the laws of Georgia. That corporation became financially embarrassed, and, owing to its want of means, could not be kept going. For that reason it was sold to the Flowers Lumber Company, or to the individuals who subsequently organized and became the owners of all of the stock of such company, the assets transferred including certain land. After the Flowers Lumber Company was organized, the plaintiff's intestate entered into a contract with John J. Flowers, by which the latter, in consideration of the former interest of said intestate in the property acquired by the Flowers Lumber Company of the Bivings Brothers Lumber Company, and in further consideration of

services that he had rendered to the individual parties composing the Flowers Lumber Company in aiding them to acquire the property of the other company, and in consideration of further services to be rendered by him in the future to the Flowers Lumber Company, agreed and contracted with him that John J. Flowers would give him a one-sixteenth interest in all the assets, property, and business of the Flowers Lumber Company, and with the further understanding that the stock certificate representing such one-sixteenth interest was to be held by Flowers as trustee or agent for plaintiff's intestate, until the profits or dividends declared or earned by the Flowers Lumber Company should pay therefor, the last-mentioned corporation being capitalized at $80,000. During his lifetime the plaintiff's intestate fully complied with the contract on his part, and it had become executed before his death. Flowers contracted and agreed with the plaintiff's intestate to hold the stock certificates representing said one-sixteenth interest in the Flowers Lumber Company in his name until they had been fully paid for as above stated. Flowers was one of the original incorporators of the Flowers Lumber Company, and agreed with the plaintiff's intestate to transfer to the latter a sufficiency of the stock so owned by Flowers to give plaintiff's intestate a one-sixteenth interest in the capital stock of the corporation, the contract being that Flowers was to transfer so much of the stock held and owned by him to the plaintiff's intestate as would represent a one-sixteenth interest of the entire capital stock of the corporation. The stock so contracted to be transferred was to be held by Flowers and to appear on the books of the corporation as his stock, and was not to be transferred to the plaintiff's intestate until a sufficient amount of money had been earned by the business to pay for it at its par value on the basis of the original capitalization of the company. Flowers further agreed to have said transfer made on the books of the corporation when the stock should have been fully paid for. The business was very profitable, and by April 1, 1900, sufficient dividends or profits had been earned by the corporation to pay for its capital stock at par. The stock was never issued to plaintiff's intestate by the corporation or by Flowers. Since January, 1905, the heirs of plaintiff's intestate have been paid dividends admitted to be due them on a one-thirty-second interest in the corporation. Other allegations were made, specifying

large amounts of dividends upon the stock representing a one-six-teenth interest in the corporation, and charging concealment of facts by J. J. Flowers and his executors. The prayers were, that the executors of John J. Flowers, deceased, should come to an accounting with the plaintiff for the stock and also for the dividends; that the plaintiff have a decree directing that the defendants cause to be transferred to him on the books of the Flowers Lumber Company "the said interest owned by the said J. M. Bivings in said Flowers Lumber Company at the time of his death, to wit, a one-sixteenth interest in the capital stock of said corporation;" and for general relief and process. Personal service was perfected on the resident executor, W. H. Flowers. An order was passed declaring that service had been perfected on the non-resident defendants by publication, and that they be made parties defendant and required to appear at the next term of court. Subsequently, on motion this order was vacated, and on demurrer the action was dismissed on the ground that the superior court of Early county was without jurisdiction, both because of the fact that the defendants were executors appointed by the probate court of the State of Alabama and were not suable as such in the courts of Goergia, and because the action was one in personam and the court was without jurisdiction to grant the relief prayed in the petition against the defendants residing in Alabama, or to proceed unless they could be made parties to the cause. There were other grounds of demurrer, but they were not passed upon by the judge. To these rulings exception was taken.

   *Joseph H. Hall, Warren Roberts, W. H. Krauss,* and *Oliver & Russell,* for plaintiff, cited *Peoples National Bank* v. *Cleveland,* 117 *Ga.* 908; *Sanford* v. *Thompson,* 18 *Ga.* 561; *Swift* v. *Swift,* 13 *Ga.* 144; *Lake* v. *Hardee,* 57 *Ga.* 466; *Johnson* v. *Jackson,* 56 *Ga.* 526; *Jackson* v. *Johnson,* 34 *Ga.* 511; *Hood* v. *Hood,* 130 *Ga.* 611.

   *J. R. Pottle, C. L. Glessner, Steiner, Crum & Weil,* and *Cobb & Erwin,* for defendants. Points and citations from the brief of Mr. Pottle: Suit was in personam; court could acquire no jurisdiction of non-resident defendants on service by publication. Pennoyer *v.* Neff, 95 U. S. 714; 1 Dig. U. S. R. "Actions," §12; Haddock *v.* Haddock, 201 U. S. 567; Brown *v.* Fletcher, 210 U. S. 82; Dewey *v.* Des Moines, 173 U. S. 192; Dull *v.* Blackman, 169

U. S. 243; *Reynolds & Hamby Co.* v. *Martin*, 116 *Ga.* 498. If Civil Code, §4976, be so construed as to authorize the relief prayed for against non-residents, it is in conflict with due-process clause of U. S. constitution. Authorities supra, and *Dennington* v. *Roberta*, 130 *Ga.* 497. Situs of stock shares was in Alabama. Civil Code, §3070; 26 Am. & Eng. Enc. L. 829; Tappan v. Mer. Bank, 19 Wall. 490; *Molyneux* v. *Seymour,* 30 *Ga.* 440; *Grote* v. *Pace,* 71 *Ga.* 232; *Oliver* v. *Oliver,* 118 *Ga.* 369; *Owens* v. *Trust Co.,* 122 *Ga.* 521; *Ga. R. Co.* v. *Wright,* 125 *Ga.* 589, 595; *Hightower* v. *Ansley,* 126 *Ga.* 8; *Greene County* v. *Wright,* 126. 504. Executors qualified in other State not suable in Georgia. 18 Cyc. 1237, 1239, 1244; 13 Am. & Eng. Enc. L. (2d. ed.) 945, 957; Braithwaite *v.* Harvey, 27 L. R. A. 101; Johnson *v.* McKinnon, 129 Ala. 223; Railroad Co. *v.* Vinet, 132 U. S. 478; Johnson *v.* Powers, 139 U. S. 156; Story, Confl. L. §513; Dicey, Confl. L. 463; Weyman *v.* Murdock, Harp. 126; Young *v.* Young, 2 Hill (S. C.), 425; Regenstein *v.* Pearlstein, 30 S. C. 194; Stevenson *v.* Dunlap, 33 S. C. 350; *Turner* v. *Linam,* 55 *Ga.* 254; *Caruthers* v. *Corbin,* 38 *Ga.* 90; *S. W. R. Co.* v. *Paulk,* 24 *Ga.* 356, 370; Civil Code, §§3318, 3521; *Buck* v. *Johnson,* 67 *Ga.* 82; *Jones* v. *Cliett,* 114 *Ga.* 673; *Taylor* v. *McKee,* 121 *Ga.* 223; *Hoskins* v. *Shedden,* 70 *Ga.* 528; *Davis* v. *Smith,* 5 *Ga.* 274; Vaughn *v.* Northrop, 40 U. S. 10; Gordon *v.* Clarke, 10 Fla. 179; Russell *v.* Hooker, 67 Conn. 24 (35 L. R. A. 495); Byers *v.* McConley, 149 U. S. 605; Tec. Co. *v.* Taylor, 2 Biss. 446; Winter *v.* Winter, 1 Walk. 211; Pearson *v.* Darrington, 32 Ala. 227; Calhoun *v.* King, 5 Ala. 523; Bisp. Eq. (4th ed.) §§47, 366; 16 Cyc. 134; *Burts* v. *Duncan,* 36 *Ga.* 580; *Kyle* v. *Montgomery,* 73 *Ga.* 345; *Russell* v. *Hubbard,* 76 *Ga.* 618.

ATKINSON, J. The corporation was chartered and had its principal office in Early county in this State. Under the decision in *People's National Bank* v. *Cleveland,* 117 *Ga.* 908, and in Jellinik *v.* Huron Copper Mining Co., 177 U. S. 1, the shares of stock involved in the controversy were personal property, and, for the purposes of a suit brought to remove a cloud or to quiet the title in this State, their situs was the domicil of the domestic corporation, and a non-resident claiming title or interest therein could be served by publication in such a suit. In addition to the provisions of the code noted in the case of *People's National Bank,* supra, reference may also be made to the Civil Code of 1895,

§ 3525, which provides that no stock in a corporation in this State shall be transferred by a foreign executor or administrator until he shall have given notice once a week for four weeks in the paper in which the sheriff's notices are published, in the county of the principal office of the corporation, of his intention to make such transfer; thus recognizing that for certain purposes the certificates of stock are not treated as wholly disconnected from the company and its situs. Questions of taxation are not here involved. The Civil Code, § 4976, declares that where any non-resident or person unknown claims or owns title to or an interest, present or contingent, in any real or personal property in this State, service on such non-resident or unknown owner or claimant may be made by publication in cases affecting such property where proceedings are brought for certain purposes, among which are, "to remove a cloud therefrom or quiet title thereto; to cancel or set aside deeds, mortgages, liens, or encumbrances thereon; to make any decree or order in which the subject of the action is real or personal property in this State, in which a non-resident or unknown person has or may have or claims an interest, actual or contingent, and in which the relief demanded consists wholly or in part in excluding him from an interest therein; where a non-resident or a person unknown has or may have or may claim present, future, or contingent interests in any property in this State." Section 3070 declares that "Stocks representing shares in an incorporated company holding lands, or a franchise in or over lands, are personalty." For the purposes indicated there was sufficient situs of the property in Early county to authorize the filing of an equitable petition in the superior court there. An action for a purely money demand can not be maintained in one State against a non-resident by causing service to be made upon him by publication. Pennoyer v. Neff, 95 U. S. 714. There could be no recovery in this action of a money judgment against the executors of Flowers. They were all non-residents, except one. They were appointed in the State of Alabama. There appears to be no administration in Georgia. The executor residing in this State has not the control of the entire estate so as to deal with it and subject it by serving him alone. In so far as the petition seeks to recover a money judgment, under the allegations thereof, it can not be maintained. But an effort to do so, though unavailing, did not authorize the

dismissal of the entire action. It was argued that the Georgia corporation was not made a party, and that the action could not be maintained without it; but it appears that no question of the necessity of making the company a party has been adjudicated by the trial court. There being sufficient situs of the stock to authorize the filing in the superior court of Early county of an equitable petition for the purposes indicated in the statute above quoted, were the prayers of this petition sufficient to bring it within the purview of the law? A prayer for specific performance and accounting operates rather upon the person than upon the property; but there was also a prayer for general relief. The allegations were to the effect that there was a perfect equity in and right to the stock vested in the plaintiff's intestate, and after his death in the plaintiff; that this had been recognized in part by the payment of some dividends; and that the mere transfer of the certificates or of the shares on the books of the company was all that remained to be done to evidence the real ownership. In *Harris* v. *Palmore,* 74 *Ga.* 273, it was ruled that where a bill in equity alleged the purchase of land in this State, the payment of the purchase-money, the refusal by the vendor to make a title to the vendee, and that the vendor was a non-resident of the State, and sought to enforce the purchase and quiet the title and possession, the rule that a defendant in equity in this State must be sued in the county of his residence was inapplicable; and the question of jurisdiction was, whether any court of equity in the State had jurisdiction. This question was answered in the affirmative, and it was further declared that "While such a bill may have contained a prayer for specific performance, and that the non-resident defendant be required to make a title to complainant, yet where it also contained a prayer for general relief, a court of equity of this State may grant such relief by a decree that the land is complainant's." This may have been a somewhat liberal construction of pleadings, but it went to the substance of the action rather than to the form of its specific prayer. No question of transfer of title to land in Georgia by a foreign will is here involved.

Inasmuch as what has been said is controlling of the question that the superior court of Early county had jurisdiction, and also of the fact that a general pecuniary judgment can not be obtained against the executors of the estate of Flowers, deceased, it is un-

necessary to discuss general questions as to how far or on what terms foreign executors or administrators may sue in this State, or when or to what extent they may be sued if they come within the State. The making of the resident executor a party would certainly not detract from the right to prosecute the action for the purposes hereinbefore mentioned. It follows from what has been said that it was error to vacate the order declaring service to have been perfected on the non-resident defendants, and also to dismiss the petition for lack of jurisdiction.

*Judgment reversed.    All the Justices concur.*